IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Northern Division

No. _____

| | |
|---|---|
| **MICHIEL COURTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | |
| **SSC HERTFORD OPERATING** ) | |
| **COMPANY LLC, d/b/a BRIAN** ) | |
| **CENTER HEALTH AND** ) | |
| **REHAB-HERTFORD,** ) | |
| ) | |
| **Defendant.** ) | |

COMES NOW Plaintiff, Michiel Courter, and files his Complaint against SSC Hertford Operating Company LLC, d/b/a the Brian Center Health and Rehab-Hertford ("the Brian Center"), as follows:

**THE PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Michiel Courter, is and was at all relevant times a citizen and resident of Elizabeth City, North Carolina.

2. The Brian Center is a Delaware limited liability company (LLC) duly authorized to do business in the State of North Carolina with a principal office located at 1300 Don Juan Road (State Road #1109), Town of Hertford, County of Perquimans, State of North Carolina.

3. On information and belief, Defendant has one manager, H. Paul Schrank II, and one member, North Carolina Holdco, LLC, each of whom are citizens of Georgia and, based

1

on Defendant's most recent Annual Report filed with the Office of the Secretary of State of North Carolina, reside at One Ravinia Drive, Atlanta, Georgia 30346.

4. In this case, Plaintiff has suffered damages in excess of $75,000.

5. Under 28 U.S.C. § 1332, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Further, the citizenship of an LLC is determined "by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.,* 542 F.3d 1077, 1080 (5th Cir. 2008). Thus, this Court has subject-matter jurisdiction of this action as none of Defendant's members is a citizen of North Carolina and the amount-in-controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendant in this case as N.C. Gen. Stat. § 1-75.4 confers jurisdiction "[i]n any action claiming injury to person . . . within or without this State arising out of an act or omission within this State by the defendant," and the exercise of jurisdiction by this Court over Defendant comports with due process.

7. Lastly, venue is proper in the Eastern District of North Carolina, Northern Division, pursuant to 28 U.S.C. § 1391(b)(2) as that is where Plaintiff resides, where Defendant's place of business is located, and where the events giving rise to this claim took place.

## FACTUAL BACKGROUND

8. At all times herein pertinent, Defendant operated a nursing and rehabilitation facility known as the Brian Center located at 1300 Don Juan Road, Hertford, North Carolina, on the real property more particularly described in Book 284, Page 241 of the Perquimans County Public Registry, incorporated herein for more particular description.

9. The Brian Center is a nursing and rehabilitation facility which houses and cares for elderly persons or persons with various physical or mental disabilities requiring assistance or skilled care.

10. At all times pertinent, the Brian Center employed various medical providers and medical staff at its Hertford, North Carolina, facility, including Dr. Michael Lawrence and other employees/servants/agents whose names and identities are not yet fully known, who were acting within the scope of their employment when they rendered medical care to Plaintiff.

11. On or about May 6, 2013, Plaintiff was admitted to the Brian Center for rehabilitation treatment and care via ambulance from Chesapeake General Hospital, Chesapeake, Virginia.

12. At all times pertinent, Plaintiff was under the care and supervision of the Brian Center employee/servant/agent, Dr. Michael Lawrence.

13. Plaintiff is and was a paraplegic due to a traumatic spinal cord injury following a motor vehicle accident on April 23, 2013.

14. Due to his paraplegia, Plaintiff is and was incontinent of the bladder and bowels, and he does and did have an indwelling Foley catheter and bag for urine collection and a disposable brief for stools. Also due to his paraplegia, Plaintiff cannot and could not provide any self-care for his bladder or bowels.

15. Also, because of his paraplegia, Plaintiff was at all pertinent times unable to move or control his own body and was unable to alleviate the physical pressure on his own skin while he lay in bed at Defendant's facility.

16. At the time of his admission to the Brian Center, Plaintiff had no skin breakdown or deterioration, and he suffered no symptoms of a urinary tract infection.

17. Also at the time of his admission, Defendant recognized and recorded its knowledge and understanding that Plaintiff was a paraplegic and was at severe risk of experiencing skin breakdown and the formation of ulcers in his skin.

18. Despite Plaintiff's condition upon admission to the Brian Center, the Brian Center took no steps to prevent skin breakdown and the formation of pressure ulcers, and failed to provide Plaintiff with the necessary equipment to attempt to do so on his own.

19. While a resident at the Brian Center, Plaintiff was frequently left to lie or sit in a brief soiled with stools for extended periods of time, and Brian Center staff failed to timely assist, telling him he had to wait his turn.

20. While a resident at the Brian Center, Plaintiff's Foley bag was often left to fill to overflowing with urine.

21. On or about May 13, 2013, while a resident at the Brian Center, Plaintiff suffered from intense pain which was unresolved by the care of Dr. Lawrence and the employees/servants/agents of the Brian Center, and Plaintiff requested to be seen at an emergency department.

22. On May 13, 2013, while still a resident at the Brian Center, Plaintiff was taken to the emergency department of Albemarle Hospital, located in Elizabeth City, North Carolina, and he was diagnosed with Pyelonephritis, or a kidney infection. Plaintiff was returned to the care of the Brian Center on May 13, 2013.

23. On or about May 15, 2013, Plaintiff's daughter, while Plaintiff assisting with a change of brief, observed a skin irregularity on Plaintiff's sacrum/coccyx area and notified

4

Brian Center nursing staff. Brian Center nursing staff inspected the area and noted Plaintiff had a decubitus ulcer (a pressure ulcer) that had already progressed to stage II.

24. Under the care of the Brian Center, Plaintiff's decubitus ulcer continued to worsen and grow in size and depth.

25. On or about May 29, 2013, Brian Center nursing staff observed a new, open blister on Plaintiff's posterior right lower extremity.

26. Under the care of the Brian Center, Plaintiff's open blister on his right ankle continued to worsen and grow in size.

27. At no time while he was at the Brian Center was Plaintiff visited by Dr. Lawrence or any other physician though he was under Dr. Lawrence' care.

28. By June 10, 2013, while still a resident at the Brian Center, Plaintiff's decubitus ulcer wound worsened to Stage III and had grown in size and depth.

29. Without examining or speaking to Plaintiff, Dr. Lawrence nonetheless referred Plaintiff to a wound clinic on June 12, 2013, and Brian Center nursing staff scheduled a wound clinic appointment for Plaintiff. The appointment was set for nine days out, or June 21, 2013.

30. On or about June 12, 2013, Brian Center nursing staff observed another new blister, located on Plaintiff's posterior right heel.

31. From June 10 to June 17, 2013, while still a resident at the Brian Center, Plaintiff's decubitus ulcer wound dramatically worsened, growing from an observed depth of 0.2 centimeters to 3.5 centimeters.

32. On June 21, 2013, some 6 weeks after the pressure ulcer was first observed in the area of Plaintiff's sacrum, while still a resident of the Brian Center, Plaintiff was finally seen

5

at the Vidant Wound Healing Center Ahoskie, located at 608 S. Academy Road, Ahoskie, NC 27910, a facility not affiliated with the Brian Center. He was diagnosed with an unstageable decubitus wound, measuring 6.7 x 3.4 x 4.2 centimeters, with granulation tissue present on surface and some devitalized tissue in the base. He was scheduled for surgical debridement on June 25, 2013 at Vidant Roanoke Chowan Hospital.

33. On June 25, 2013, Plaintiff was admitted to Vidant Roanoke-Chowan Hospital, for surgical debridement of a State 4 sacral decubitus with osteomyelitis. On that day, his wound was surgically debrided of all devitalized tissue, inclusive of skin, subcutaneous tissue, fascia, and bone. After surgery, his wound measured 4.5 x 4.5 x 3.5 centimeters, and an indwelling wound vac was placed over the wound. Plaintiff remained hospitalized post-surgery at Vidant Roanoke Chowan Hospital until July 1, 2013.

34. While at Vidant Roanoke-Chowan Hospital, Plaintiff demanded he not be sent back to the Brian Center due to the poor care he received there. A bed was located for Plaintiff at an alternate facility, Lifecare Hospital, in Rocky Mount, North Carolina, where he was hospitalized from July 2, 2013, until July 18, 2013 for antibiotic therapy and wound care for stage IV sacral decubitus ulcer and osteomyelitis.

35. On or about July 18, 2013, Plaintiff was released from Lifecare Hospital to Vidant Rehab in Greenville, North Carolina. He was discharged home on August 10, 2013, which was and is a modified room of his daughter's garage. While at home, his daughter provided bowel and bladder care and wound care, except for brief doctor's visits and visits from home health nurses.

36. Plaintiff required family member and medical and home health care for his wound from approximately July 2013 through September 2014.

6

37. Plaintiff's decubitus ulcer slowly healed over approximately two year and four months. The wound was treated with a wound vac and wound dressing for a significant time thereafter. The decubitus ulcer would did not fully close until September 2104.

38. Plaintiff suffers permanent loss of tissue and scarring from the decubitus ulcer, and a risk of recurring skin breakdown at the wound site.

39. Among other consequences from the care and treatment Plaintiff received at the Brian Center, Plaintiff suffered a Stage 4 sacral decubitus, the most traumatic stage of pressure ulcer, and two other skin irregularities developed on his posterior right heel. Plaintiff also suffered severe, intense pain that was not controlled by Dr. Lawrence and the employees/servants/agents of the Brian Center.

40. Plaintiff's wound ultimately required another hospital admission to the Hunter Holmes McGuire Veterans Administration Medical Center ("HHM VAMC"), located in Richmond, Virginia, on June 11, 2014. As a patient there, Mr. Courter was required to remain lying on his stomach on a hospital bed or a remote hospital gurney 24 hours a day, seven days a week. He remained in this facility until September 19, 2014. During his stay at HHM VAMC, he also required a wound vac, debridement of the wound and several medications. Again, Mr. Courter was discharged to his home, located in his daughter's house.

41. Presently, Mr. Court remains at the home of his daughter. His ulcer has healed, but he is required to remain vigilant about the care of where the wound was located. Mr. Courter cannot lay on his back; he always has to sleep on his stomach when is in a laying down position. The skin where the ulcer was located will permanently be very tender.

# CAUSE OF ACTION
# MEDICAL MALPRACTICE/NEGLIGENCE

42. At all times material to this proceeding, the employees/servants/agents of the Brian Center owed a duty to Plaintiff to provide him that minimum standard of care required of a health care provider in the State of North Carolina.

43. In the Brian Center's care and treatment of Plaintiff from May 6, 2013 through June 25, 2013, the employees/servants/agents of the Brian Center were negligent and breached the applicable standards of practice and care under the circumstances then and there existing, as follows:

   a. Failed to develop and implement a care plan which would adequately address Plaintiff's needs, including preventing skin breakdown;

   b. Failed to follow appropriate practices for a patient in Plaintiff's condition, including but not limited to providing an appropriate mattress for Plaintiff's bed and wheelchair and a trapeze on Plaintiff's bed;

   c. Failed to rotate of turn Plaintiff to prevent the formation of Pressure ulcers;

   d. Failed to properly inspect and monitor the skin condition of Plaintiff and to timely notice the skin breakdown on Plaintiff's sacrum before it developed into a decubitus ulcer;

   e. Failed to establish and follow an appropriate bowel and bladder program, including failure to change soiled briefs, drain full Foley bags, and apply a skin barrier cream after each bowel incontinent episode;

   f. Failed to turn Plaintiff on an appropriate schedule;

   g. Failed to timely teach Plaintiff skin breakdown prevention and instruct on how he could assist;

8

> h. Failed to appropriately respond to the decubitus ulcer once made aware of the condition;
>
> i. Fail to provide appropriate care to prevent the progressive deterioration of the decubitus ulcer to Stage 4; and
>
> j. Supervisory employees/agents/servants, including but not limited to nursing managers, at the Brian Center failed to adequately supervise the care of Plaintiff by other employees/agents/servants of the Brian Center.

44. The aforesaid and other acts and omissions were negligent, and constituted medical malpractice in that Defendant's employees/servants/agents failed to exercise that degree of skill and care required of a health care provider in the State of North Carolina.

45. As a direct and proximate result of Defendant's negligent acts and omissions, and breach of the standard of care, as recited above, the Plaintiff has endured, and continues to endure, great physical deformity, mental and emotional anguish, disruption of activities of daily living, has undergone multiple surgeries and hospitalizations and treatments to address the symptoms and injuries, and other serious and permanent medical and other disabilities.

46. As a further direct and proximate result thereof, Plaintiff has incurred, and will continue to incur substantial medical, rehabilitation and related expenses.

47. As such, Plaintiff is entitled to have and recover of Defendant a substantial sum of money in excess of One Million and 00/100 Dollars ($1,000,000.00), as compensation for the injury and damages proximately resulting from Defendant's negligence and medical malpractice.

48. Further, the conduct of Defendant's agents and employees as set forth above was willful, wanton, and in gross disregard of the Plaintiff's needs and his right to be treated with

dignity and compassion, and to be treated in such a way as to avoid the injuries he received while in the care of the Brian Center.

49. Pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure, applicable to these diversity-based proceedings, Plaintiff has caused his medical records to be reviewed by a person who is expected to comply with the requirements of Rule 702 of both the North Carolina and Federal Rules of Evidence and who is willing to testify that the care and treatment by employees/servants/agents of the Brian Center breached the applicable standards of care, and/or that the employees/servants/agents of the Brian Center failed to use reasonable care and diligence applying their knowledge, training and skill to Plaintiff's care.

50. In additional, this is a case of *res ipsa loquitur* in that the injuries suffered by Plaintiff were caused and allowed to occur by the agents and employees of the Brian Center, and are of a type that would not have occurred, or would have been prevented, but for the negligence of the Brian Center and its agents and employees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court that he have and recover of Defendant a substantial sum in excess of $1,000,000.00 (One Million Dollars) to compensate him for the damages sustained, punitive damages in the maximum amount authorized by law, and for such other and further relief to which Plaintiff may be so entitled to receive. Let the costs be taxed to Defendant.

This the 31st day of August, 2015.

                                      **MICHIEL COURTER,**

                                      By: __/s/ L. Phillip Hornthal, III
                                                Of Counsel

L. Phillip Hornthal, III Esquire (N.C. State Bar No. 19984)
HORNTHAL, RILEY, ELLIS & MALAND, LLP
301 East Main Street
Elizabeth City, NC 27909
Phone 252-335-0871
Fax: 252-335-4223
phornthal@hrem.com

David N. Ventker, Esquire (NC State Bar No. 26028)
Marissa M. Henderson, Esquire (NC State Bar No. 46822)
VENTKER WARMAN HENDERSON, PLLC
256 W. Freemason Street
Norfolk, VA 23510
757-625-1192 - Telephone
757-625-1475 - Facsimile
dventker@ventkerlaw.com
mhenderson@ventkerlaw.com

*Attorneys for Plaintiff*